**BRYAN CAVE LLP**
H. Mark Mersel (SBN 130382)
3161 Michelson Drive, Suite 1500
Irvine, CA  92612-4414
Telephone:   (949) 223-7000
Facsimile:    (949) 223-7100
Email:        mark.mersel@bryancave.com

**BRYAN CAVE LLP**
David Harford (SBN 270696)
120 Broadway, Suite 300
Santa Monica, CA  90401-2386
Telephone:   (310) 576-2100
Facsimile:    (310) 576-2200
E-Mail:   david.harford@bryancave.com

Attorneys for TCJ I, LLC, a Delaware limited liability company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TCJ I, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TRIMED MEDICAL WHOLESALERS, INC., a California corporation, RICHARD T. KAYSERYAN, an individual, and VERJINE YESAIAN, and individual<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>**1) BREACH OF CONTRACT**<br>**2) BREACH OF GUARANTY**<br>**3) JUDICIAL FORECLOSURE**<br>**4) JUDICIAL FORECLOSURE**<br>**5) APPOINTMENT OF RECEIVER** |

10151936.5

COMPLAINT

Plaintiff TCJ I, LLC ("Plaintiff" or "TCJ"), for its complaint against defendants Trimed Medical Wholesaler, Inc. ("Trimed") Richard T. Kayseryan ("Kayseryan"), and Verjine Yesaian (collectively, "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over all claims for relief pleaded herein pursuant to 28 U.S.C. § 1332(a)(1).  TCJ is a limited liability company organized under Delaware law and headquartered in New York.  TCJ's sole owner and member is The Credit Junction Holdings, Inc., which is incorporated in Delaware and has its principal place of business in New York.   The Defendants are citizens of the state of California.  The amount in controversy exceeds $75,000 because, as pleaded herein, Defendants are obligated to pay no less than $3,000,000 to TCJ pursuant to the loan agreements and guaranty signed by Kayseryan.

2.     The Court has personal jurisdiction over Defendants because they are domiciled in this judicial district.

3.     Venue in this district is proper under 28 U.S.C. § 1391(b) because all the Defendants reside in this judicial district and property subject to the dispute is located in this judicial district.

## SUMMARY OF THE CASE

4.     This is an action to enforce the rights and remedies of a secured lender, Plaintiff TCJ, under controlling loan documents, following numerous defaults by the borrower, Trimed, and its guarantor, Richard Kayseryan.  As described below, Trimed is violating those loan documents by withholding financial information about its business and failing to arrange for the Deposit Account Control Agreement(s) ("DACA") that Plaintiff needs to protect its cash collateral for the $3,000,000 credit line that Plaintiff provided to Trimed.

5.     Plaintiff has learned Trimed and its President and CEO, Kayseryan, were charged by the United States Attorney for the Central District of California for numerous federal crimes involving Trimed's business, including a detailed scheme

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

1 involving what the Department of Justice has described as Trimed writing bogus
2 checks and paying cash to "shell businesses," all part of a conspiracy to evade
3 financial-institution currency-reporting requirements for transactions of $10,000 or
4 more.  Plaintiff has also discovered that Kayseryan has been indicted for other
5 crimes relating to Trimed, including fraud and perjury.

6       6.    TCJ brings this action to protect its rights as a secured lender.

7                              **PARTIES**

8       7.    Plaintiff TCJ I, LLC is a limited liability company organized under the
9 laws of the State of Delaware with its principal place of business at 132 West 31st
10 Street, Suite 1301, New York, New York 10001.  TCJ is an affiliate of, and a
11 successor-in-interest to, The Credit Junction Holdings, Inc., which provides asset-
12 based financing and financial services in towns, cities and regions across the United
13 States and Canada.

14      8.    Defendant Trimed Medical Wholesalers, Inc. is, on information and
15 belief, a corporation organized under the laws of the State of California with its
16 principal place of business at 52 East Santa Anita Avenue, Burbank, CA 91502.
17 Trimed is, on information and belief, a wholesaler of medical products.  Trimed is
18 also the borrower under the loan documents described below.

19      9.    Defendant Richard T. Kayseryan is a natural person residing at 604
20 South Sunset Canyon Drive, Burbank, California 91501.  Kayseryan is, on
21 information and belief, the President and Chief Executive Officer of Trimed.
22 Kayseryan is also the guarantor of Trimed's obligations to Plaintiff TCJ I.

23      10.   On information and belief, Defendant Verjine Yesaian is a natural
24 person residing at 604 South Sunset Canyon Drive, Burbank, California 91501.  She
25 is the spouse of Kayseryan and the co-signatory of a deed of trust provided to TCJ to
26 secure the guaranty provided by Kayseryan.

27
28

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

10151936.5

2
COMPLAINT

11.     TCJ is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants, was and is the agent, servant, employee, representative and/or alter ego of the remaining defendants and, in doing the things hereinafter alleged, was acting within the scope of his, her or its authority as such agent, servant, employee, representative and/or alter ego, with the knowledge, consent, permission and ratification of all remaining defendants.

## FACTUAL ALLEGATIONS

### The Controlling Loan Documents

12.     On or about September 26, 2016, The Credit Junction Holdings, Inc. and Trimed, and Kayseryan entered into and executed several loan documents, including (but not limited to): the Master Business Loan Agreement dated as of September 26, 2016 (the "Master Agreement"), the Commercial Security Agreement dated as of September 26, 2016 (the "Security Agreement"), a Commercial Promissory Note September 26, 2016 (the "Note"), and a Continuing Guaranty dated as of September 26, 2016 (the "Guaranty") (all together, the "Loan Documents").  True and correct copies of the Master Agreement, the Security Agreement, the Note, and the Guaranty are attached as **Exhibits A through D**, respectively.

13.     Pursuant to the Loan Documents, The Credit Junction Holdings agreed to extend financing to Trimed, with an initial advance of $1,000,000 made to Trimed under a line of credit on the closing of the Master Agreement.  As recited in Section 4(a)(2) of the Master Agreement, Trimed could also have potential access to additional funds, which with the initial advance could total up to $3,000,000.

14.     Pursuant to Section 2.1 of the Note, the Parties agreed that "[i]nterest will be charged from the date of the funding of the Initial Advance, which will occur on the date hereof, and on each Additional Advance of a Loan, at the rate of sixteen percent (16%) per year until the principal, together with all accrued and unpaid interest of all Loans, is paid in full."  Pursuant to Section 8 of the Note, Trimed

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

agreed that in the event of a continuing default, such as the defaults that have occurred described below, "the interest rate [on all outstanding balances] will be increased by five percent (5%) above the interest rate set forth in <u>Section 2</u>[.]" Thus, Trimed is subject to a default interest rate of 21% in the event of a continuing default, as has happened here.

15. Pursuant to Section 7 of the Note, "[u]pon the occurrence and during the continuance of an Event of Default, Lender may require, without notice or demand, that [Trimed] repay the entire amount of the Loan at once. Even if, during the continuance of an Event of Default, Lender does not require [Trimed] to pay immediately in full as described above, Lender will still have the right to do so at any other time that an Event of Default is continuing. [Trimed] agrees to pay all costs of collection and enforcement of this Note, including (but not limited to) reasonable attorneys' fees, which include the costs to Lender of the services of its in-house counsel." Plaintiff therefore has the right to demand full payment on the outstanding loan balance in case of a continuing default by Trimed, and such costs incurred in collecting on and enforcing the note, in such instance, shall be paid by Trimed.

16. In addition, pursuant to Section 1 of the Security Agreement, Trimed granted an "unconditional first priority security interest in, the Collateral [as defined at-length in Section 2 of the Security Agreement] to secure payment of all Indebtedness from [TCJ] to Lender and performance of all other obligations under the [Master Agreement], this Security Agreement and the other Related Documents . . ." By way of example, but not limitation, the Collateral included in the blanket security interest included "all of Grantor's present and future right, title and interest in and to any and all property of [Trimed], of any kind or description, real or personal, tangible or intangible, wherever now or hereafter located or whether now existing or hereafter arising or acquired[.]" The Collateral also includes (but was

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

1  not limited to) bank accounts, accounts receivable, warehoused inventory and all of
2  Trimed's assets of any kind.

3       17.    Under the Guaranty that Kayseryan executed, he agreed (with the
4  consent of his wife, who signed to give that consent) to "unconditionally and
5  irrevocably guarant[ee] to Lender . . . (a) the due and prompt payment . . . of Trimed
6  . . . to Lender and (b) the due and prompt performance of the Obligations of
7  [Trimed] to Lender."  Thus, in the event of default by Trimed, Kayseryan is
8  personally liable for any and all obligations of Trimed.

9       18.    The Master Agreement also contained several critical post-closing
10 covenants for the protection of TCJ.  Among them was Section 4(c), which states
11 that the Parties "shall have entered into and executed a deposit account control
12 agreement ("DACA"), in form and substance acceptable to Lender, which shall
13 provide that Lender has 'control' (as defined in Article 9 of the Uniform
14 Commercial Code) of all accounts of [Trimed] with Bank as set forth in the
15 DACA."  In addition to the Master Agreement, Richard Kayseryan in his capacity as
16 President and CEO of Trimed, executed a Terms and Conditions letter (the "Terms
17 Letter"), reiterating that as a condition of the Loan Documents, The Credit Junction
18 Holdings required the "execution of [a] Deposit Account Control Agreement
19 covering all of [Trimed]'s bank accounts."  A true and correct copy of the Terms
20 Letter is attached as **Exhibit E**.

21      19.    Having control over a borrower's account through a DACA or
22 otherwise is critical protection for a lender like Plaintiff, since control of this kind
23 can sometimes be a requirement for perfection of a security interest in cash
24 collateral of this kind.  In addition, Plaintiff's security interest was duly perfected
25 through the filing of an appropriate UCC-1 Financing Statement, a true and correct
26 copy of which is attached as **Exhibit F**.

27      20.    Because Plaintiff's Collateral was comprised of Trimed's assets, and
28 given that Trimed's ability to repay was based on the details of Trimed's business,

the Master Agreement requires Trimed to provide various financial documents, reports and information on a regular basis.  For example, Section 6(c)(1) of the Master Agreement requires Trimed to provide:

- a quarterly balance sheet and income statement within 30 days of the end of each quarter

- monthly balance sheets and income statements within 20 days after month-end;

- quarterly sales tax remittance forms and quarterly federal tax returns on Form 941 within 45 days of the end of each quarter;

- a signed Borrowing Base Certificate for within 10 days of the end of each month;

- monthly bank statements and weekly bank snapshots;

- detailed aging reports for Trimed's accounts receivable and detailed aging reports for Trimed's accounts payable for January and February 2017.

21.     In addition, Section 6(*l*) of the Master Agreement gives TCJ the right to inspect and audit any and all of the Collateral and to inspect and audit Trimed's other properties, books, accounts and records "at any reasonable time."

22.     Trimed also executed a Warehouseman Agreement dated November 22, 2016 (the "Warehouse Agreement"), which under Section 5 entitles TCJ to enter the warehouse where Trimed stored its goods for the purpose of "examining, removing, taking possession of or dealing with" any of Trimed's goods, with removal being permitted subject only to the warehouse being paid any fees due.  A true and correct copy of the Warehouse Agreement is attached as **Exhibit G**.

23.     Plaintiff TCJ became the successor-in-interest to all rights of The Credit Junction Holdings under the Loan Documents when on or about September 30, 2016, in accordance with: Section 10(f) of the Master Agreement; Section 8 and 14 of the Guaranty; Section 1 and 14 of the Note; and Section 9(a) of the Security

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

Agreement, The Credit Junction Holdings assigned its "right, title, and interest" in the Loan Documents with Trimed, to TCJ, by way of a Loan Purchase Agreement dated September 30, 2016 (the "Purchase Agreement").  A true and correct copy of the Purchase Agreement is attached as **Exhibit H**.

24.     On November 16, 2016, as security for the Guaranty, Defendant Kayseryan and his spouse, Verjine Yesaian, executed a deed of trust for the benefit of TCJ, which was recorded in the Official Records, County of Los Angeles on November 23, 2016, as document number 20161479853.  The Deed of Trust secures a lien against Kayseryan's residence, which is located at 604 S. Sunset Canyon Drive in Burbank California (the "Property").  A true and correct copy of the Deed of Trust is attached hereto as **Exhibit I**.

25.     Pursuant to Section B(6)(d) of the Deed of Trust, TCJ may, upon Kayseryan's default upon the Guaranty, "bring a court action to foreclose this Deed of Trust or to enforce its provisions or any of the Obligations secured by this Deed of Trust."

**The Defaults by Defendants Trimed and Kayseryan**

26.     Despite written demand by Plaintiff, Defendants have remained in breach of the Loan Documents and in disregard of Plaintiff's most basic rights as lender.

27.     By letter and notice dated March 4, 2017 (the "March Default Notice"), TCJ , through counsel, notified Defendants of their numerous continuing defaults under the Loan Documents.  A true and correct copy of the March Default Notice is attached as **Exhibit J**.  Pursuant to the March Default Notice, TCJ gave notice of breaches that included, but were not limited to, the following breaches of the Master Agreement:

- Trimed had failed move its depository accounts to a financial institution willing to provide a DACA for TCJ's protection in breach of Section 4 (c);

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

- Trimed did not provide quarterly balance sheet and income statement for Fourth Quarter 2016 within 30 days of the end of that quarter in breach of Section 6(c)(1)(i)(B);

- Trimed failed to provide TCJ with monthly balance sheets and income statements for December 2016 and January 2017 within 20 days after month-end in breach of Section 6(c)(1)(i)(C);

- Trimed failed to provide quarterly sales tax remittance forms and quarterly federal tax returns for Fourth Quarter 2016 on Form 941 within 45 days of the end of that quarter in breach of Section 6(c)(1)(ii);

- Trimed had breached Section 6(c)(1)(iv) and (v), by failing to provide a signed Borrowing Base Certificate for January 2017 within 10 days of the end of that month; and

- Trimed failed to provide bank statements for December 2016, January 2017, weekly bank snapshots for February 2017, detail aging reports for Trimed's accounts receivable for February 24, 2017 and detail aging reports for Trimed's accounts payable for January and February 2017 in violation of Section 6(c)(1)(v).

28.    As a result of these breaches, TCJ declared that Events of Default by Trimed had occurred under Sections 8(a)(3) and 8(a)(6) of the Master Agreement. Accordingly, pursuant to Section 8(b) of the Master Agreement, all of TCJ's contractual obligations to Trimed were declared terminated, including any obligations of TCJ under any of the Loan Documents.  In addition, all of Trimed's Indebtedness to Plaintiff, including (but not limited to) the balance of $3,000,000 loaned under the credit line to Trimed, became immediately due and payable, pursuant to Section 8(b) of the Master Agreement and Section 7 of the Note. Trimed also became liable to Plaintiff for interest at the Default Interest Rate of 21%, pursuant to Section 8 of the Note, as well as liable for Plaintiff's attorneys'

fees and other expenses, pursuant to Section 10(g) of the Master Agreement and Section 7 of the Note.

29.     In addition, as a result of the Events of Default, Plaintiff is entitled to exercise any and all rights, options and remedies under the Loan Documents and/or under the Uniform Commercial Code.  By way of example (but not limitation),  TCJ now has the right, under Section 6 of the Security Agreement, to take possession of all tangible personal property included in the Collateral (as defined in the Security Agreement), as well as the right to collect the accounts receivable of Trimed by notifying Trimed's account debtors to make payments directly to Plaintiff.

30.     Furthermore, as a result of Trimed's defaults, Trimed's President and Chief Executive Officer, defendant Kayseryan, was in default under the Guaranty of Trimed's Obligations.  Thus, Plaintiff has a right to recover from defendant Kayseryan all remedies, including foreclosure of the Deed of Trust and full repayment of all of the Obligations of Trimed owed to Plaintiff.

31.     Instead of complying with their obligations when given the opportunity to do so, Defendants, through counsel, Robert Crook, Esq., repudiated their contractual obligations, refusing to comply with the supposedly "cumbersome" loan requirements to which Defendants had agreed.  Crooks response to the demand letter claimed that TCJ had made "unreasonable requests;" that Trimed "is not a company that is in the business of providing a variety of monthly, quarterly, and annual reports and audits to satisfy apparent, nonstated [sic] concerns of its lending institution; and that "[o]ngoing questions about TriMed's receivables, expenditures including tax payments, and other sensitive business questions are not appropriate . . . ." *See, e.g.*, Crook's letter dated February 28, 2017, a true and correct copy of which is attached as **Exhibit K**.

### **Plaintiff's Discovery of the Indictment of Kayseryan Relating to Trimed**

32.     As if these multiple breaches by Defendants were not enough, in preparing to file this action, Plaintiff discovered that defendant Kayseryan has been

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

1 indicted for numerous federal felonies directly related to Trimed's business. Now, it

2 has become clear why Defendants refuse to provide any regular financial reporting

3 to Plaintiff.

4      33.     Attached as **Exhibit L** is a true and correct copy of the now-unsealed

5 Indictment dated April 6, 2017 handed down against defendant Kayseryan by a

6 federal Grand Jury. Attached as **Exhibit M** is a true and correct copy of a news

7 report on the criminal conspiracy with which Kayseryan and others are charged –

8 and for which defendant Kayseryan is facing "up to 94 years in prison."

9      34.     All of the felonies with which defendant Kayseryan has been charged

10 relate directly to the financial integrity (or lack thereof) of Trimed's business and

11 the Collateral that is Plaintiff's security for the more than $3,000,000 that

12 Defendants owe TCJ. By way of example, the United States Government has

13 brought charges against Kayseryan for the following, which comes from page 7 of

14 the Indictment attached as Exhibit L:

```
 1          a.   Defendant KAYSERYAN would issue thousands of dollars
 2   at a time in checks drawn from TRIMED business accounts, namely, BofA
 3   2349 and CNB 1925 (the "TRIMED checks"), which defendant KAYSERYAN
 4   would make payable to the shell businesses, defendant MESROPYAN,
 5   S.G., S.G.'s mother, and to cash.
 6          b.   Defendant KAYSERYAN would deliver the TRIMED checks to
 7   M.F. who, in turn, would deliver the TRIMED checks to defendant
 8   MESROPYAN and to S.G.
 9          c.   Defendant MESROPYAN and S.G. would deposit the TRIMED
10   checks into the funnel accounts.
11          d.   Defendant MESROPYAN and S.G. would withdraw cash from
12   the funnel accounts in amounts under $10,000 per individual
13   withdrawal, including in multiple same-day withdrawals that, when
14   aggregated, exceeded $10,000 (the "structured proceeds").
15          e.   Defendant MESROPYAN, M.F., and S.G. would aggregate
16   the structured proceeds and would deliver the structured proceeds to
17   defendant KAYSERYAN.
```

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

35.     The Indictment also recounts (on p. 8) how Defendant Kayseryan was caught hiding almost half a million dollars of "laundered" funds in a hidden crawl space in his home:

```
1    Defendant KAYSERYAN Possesses Structured Currency
2    Overt Act No. 1:  On October 27, 2011, defendant KAYSERYAN
3    possessed, hidden within a concealed crawl space on the second floor
4    of his residence in Glendale, California, approximately $459,100
5    cash, which was divided between 35 separate envelopes, and defendant
6    KAYSERYAN possessed an additional $3,500 cash in the master bedroom
7    of his residence divided between two envelopes.
```

36.     Kayseryan has also been indicted for fraud and perjury, as detailed on p. 25-26 of Exhibit L.

37.     Based on the foregoing, TCJ has good reason to enforce its rights under the Loan Documents to seek temporary restraints and a preliminary injunction to protect its rights, including its lien on the Collateral and its rights under the Deed of Trust while this action is pending.

## FIRST CLAIM FOR RELIEF

**Breach of Contract: Note, Master Agreement, and Security Agreement**

(Against Defendant Trimed)

38.     Plaintiff re-alleges and incorporates by this reference the allegations in Paragraphs 1 through 37.

39.     Trimed and TCJ are parties to fully enforceable agreements: the Master Agreement, the Security Agreement, and the Note, whose terms are incorporated by this reference to Exhibits A-C attached hereto.

40.     Plaintiff has fully performed its obligations under the Master Agreement, the Security Agreement, and the Note.

41.     As set forth more fully above, Trimed is in continuing breach of the Master Agreement because of its failure to provide to TCJ, at any time:

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

10151936.5

- Quarterly balance sheets and income statements for the Fourth Quarter of 2016 and the First Quarter of 2017;

- Monthly balance sheets and income statements for December 2016, January 2017, February 2017, March 2017, and April 2017;

- Quarterly sales tax remittance forms and quarterly federal tax returns for the Fourth Quarter 2016 and First Quarter 2017 on Form 941;

- A signed Borrowing Base Certificate for January 2017, February 2017, March 2017,  April 2017, and May 2017;

- Bank statements for December 2016, January 2017, February 2017, March 2017, April 2017, and May 2017;

- Weekly bank snapshots for February 2017, March 2017, April 2017 and May 2017;

- Detail aging reports for Trimed's accounts receivable for the week ending February 24, 2017, March 2017, April 2017, and May 2017;

- Detail aging reports for Trimed's accounts payable for October 2016, November 2016, December 2016, January 2017, February 2017, March 2017, and May 2017; and

- Perpetual inventory reports for Trimed's inventory for February 2017, March 2017, April 2017, and May 2017.

42.    Trimed is also in continuing breach of its obligation to move its depository accounts to a financial institution willing to provide a Deposit Account Control Agreement for TCJ's protection.

43.    Under Sections 8(a)(3) and 8(a)(6) of the Master Agreement, Defendant Trimed's actions and inactions constitute Events of Default.

44.    Pursuant to Section 8(b) of the Master Agreement and Section 7 of the Note, TCJ has been damaged in the amount of no less than $3,000,000 which is currently due from Trimed under the Master Agreement and Note, including interest at the Default Interest Rate of 21%, pursuant to Section 8 of the Note.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

45.     Further, Trimed is liable to Plaintiff for all of Plaintiff's attorneys' fees, costs and expenses relating to this dispute, pursuant to Section 10(g) of the Master Agreement, Section 9(a) of the Security Agreement, and Section 7 of the Note.

## SECOND CLAIM FOR RELIEF

### Breach of Guaranty

### (Against Defendant Kayseryan)

46.     Plaintiff re-alleges and incorporates by this reference the allegations in Paragraphs 1 through 45.

47.     Kayseryan and TCJ are parties to a fully enforceable agreement: The Guaranty whose terms are fully incorporated hereto by reference to Exhibit D.

48.     Plaintiff has fully performed its obligations under the Guaranty.

49.     As more fully set forth above, Defendant Kayseryan promised in the Guaranty to ensure "the due and prompt performance of the Obligations of [Trimed] to [Plaintiff]".

50.     Due to Trimed's continuing Events of Default on several provisions of the Loan Documents, Defendant Kayseryan is liable to the full extent of Trimed's liabilities, as those liabilities are more fully set forth above.

51.     TCJ has been damaged in the amount of no less than $3,000,000 which is the amount currently owed by Trimed and guaranteed by Kayseryan.

52.      Further, Kayseryan is liable to Plaintiff for all of Plaintiff's attorneys' fees, costs and expenses relating to this dispute, pursuant to Section 9 of the Guaranty.

## THIRD CLAIM FOR RELIEF

### Judicial Foreclosure

### (Against Defendants Kayseryan and Yesaian)

53.     TCJ re-alleges and incorporates by this reference the allegations in Paragraphs 1 through 52.

54.     By the terms of the Deed of Trust, Kayseryan and Yesaian agreed TCJ may "bring a court action to foreclose this Deed of Trust or to enforce its provisions or any of the Obligations secured by this Deed of Trust."

55.     As alleged above, Defendants failed to perform under the Loan Documents, despite requests to do so by TCJ.

56.     By reason of Defendants' defaults under the Loan Documents as alleged above, TCJ is entitled to judicial foreclosure of the security interests granted by the Deed of Trust, a deficiency judgment, and for such other relief as requested herein.

57.     Additionally the Section A(3) of the Deed of Trust provides for the recovery of attorneys' fees.  After Trimed defaulted on and breached the terms of the Loan Documents, as alleged above, TCJ has employed attorneys to commence and prosecute this action.  TCJ is therefore entitled to the recovery of its reasonable attorneys' fees under the terms of the Loan Documents, in an amount according to proof at trial.

## FOURTH CLAIM FOR RELIEF

### Judicial Foreclosure

(Against Trimed)

58.     TCJ re-alleges and incorporates by this reference the allegations in Paragraphs 1 through 57.

59.     Section 1 of the Security Agreement granted to "Lender a continuing and unconditional first priority security interest" in "the Collateral," which, under Section 2, included but was not limited to "all of [Trimed's] present and future right, title and interest in and to any and all  [of its] property. . . ."

60.     As more fully set forth above, pursuant to Section 6 of the Security Agreement and Section 8(b) of the Master Agreement, upon an Event of Default, TCJ is entitled to exercise all of its rights in the Collateral in which Trimed gave a security interest, including (but not limited to) the right to foreclose on and take

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

possession of the Collateral, to begin collecting on the accounts receivable of Trimed that were part of the Collateral, and to extinguish any junior liens that might exist on any of the Collateral.

61.     As alleged above, Defendants failed to perform under the Loan Documents, despite requests to do so by TCJ.

62.     By reason of Defendants' defaults under the Loan Documents as alleged above, TCJ is entitled to judicial foreclosure of the security interests granted by the Security Agreement, and such other relief as requested herein.

63.     Additionally, Section 9(a) of the Security Agreement provides for the recovery of attorneys' fees.  After Borrower defaulted on and breached the terms of the Loan Documents, as alleged above, TCJ has employed attorneys to commence and prosecute this action.  TCJ is therefore entitled to the recovery of its reasonable attorneys' fees under the terms of the Loan Documents, in an amount according to proof at trial.

## FIFTH CLAIM FOR RELIEF

### Request for Appointment of Receiver and Injunctive Relief

(Against All Defendants)

64.     TCJ re-alleges and incorporates by this reference the allegations in Paragraphs 1 through 63.

65.     By the terms of the Master Agreement, Security Agreement, and Note, Defendants granted a security interest in the Collateral of Trimed, for the purpose of securing payment of the indebtedness evidenced owed to TCJ.

66.     By the terms of the Deed of Trust, Defendants Kayseryan and Yesaian, granted a security interest in the Property to TCJ.

67.     As set forth more fully above, Defendants are in default under the Loan Documents, which constitute defaults under the Security Agreement and Deed of Trust.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

68.     By the express terms of the Deed of Trust and the Security Agreement, and for the purpose of satisfying the obligations secured by those instruments, upon such defaults, TCJ is entitled to enter into and upon Defendants' property and the improvements situated thereon and to take and hold the possession and control of the Property and the Collateral for the purpose of protecting and preserving the property secured by the Deed of Trust and Security Agreement and/or to sell the same for and on behalf of Plaintiff pursuant to the terms of the Deed of Trust and Security Agreement, and is entitled to apply the sums so collected, in accordance with the terms thereof as hereinabove quoted, and for such other purposes as are specified in the Deed of Trust and Security Agreement.

69.     TCJ is informed and believes and on that basis alleges that by virtue of the pending criminal charges against Kayseryan and Trimed, Defendants are incapable of and/or unwilling to cure their defaults.

70.     TCJ is also informed and believes and on that basis alleges that, based on the allegations of a criminal scheme to take and secrete cash that should be used in the course of Trimed's business, Defendants will take and secrete the Collateral meant to secure TCJ's debt.

71.     Because of the pending risk to TCJ posed by Defendants' allegedly criminal conduct, Plaintiff seeks the immediate appointment of a receiver.

72.     It is critical that a receiver be appointed at this time to marshal and safeguard the remaining property in which Defendants hold an interest to realize the remaining proceeds thereof, to open mail and recover all payments and sums for the benefit of TCJ, and do all the acts necessary to protect the property.

73.     Unless a receiver is appointed, Defendants will continue to misappropriate, secrete, and mishandle property in which TCJ holds a security interest, all to the detriment and irreparable loss of TCJ.

74.     TCJ has no speedy or adequate remedy at law and will suffer irreparable damage, injury, and harm unless appropriate equitable relief is granted.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

75.    TCJ further seeks a temporary restraining order and preliminary and permanent injunctions, in aid of the receiver, restraining and enjoining Defendants, inclusive, and their agents, servants and employees, and all those acting in concert with them, and each of them, from engaging in or performing, directly or indirectly, any of the following acts:

a. Demanding, collecting, receiving, spending or in any way converting or using any of the proceeds of the property to which TCJ holds a security interest;

b. Hiding, secreting, transferring, selling, pledging, granting a security interest in, or in any other matter disposing or hypothecating any of that property;

c. Transferring, concealing, destroying, defacing, or altering any of the instruments, documents, books, records, or any other writings, whether in hard copy or maintained electronically, relating to the business of Trimed;

d. Transferring directly or indirectly any interest by sale, shipment of goods, pledge or grant of security interest, assignment, invoice or encumbering in any manner the property in which plaintiff holds a security interest, and any and all proceeds or products thereof; and

e. Withholding true copies of any and all documents and information called for by the Master Agreement, including but not limited to quarterly, monthly and annual balance sheets and income statements, sales tax remittance forms and federal tax returns on Form 941, signed Borrowing Base Certificates, bank statements and weekly bank snapshots, detailed aging reports for Trimed's accounts receivable and accounts payable.

WHEREFORE, TCJ prays for relief as set forth below.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

# **PRAYER**

**On the First Claim:**

1.      Compensatory damages;

2.      Pre and post-judgment interest;

3.      An award of attorneys' fees, costs, and expenses as provided by the Loan Documents in an amount subject to proof; and

4.      Such other and further relief as the Court deems just and proper.

**On the Second Claim:**

1.      Compensatory damages;

2.      Pre and post-judgment interest;

3.      An award of attorneys' fees, costs, and expenses as provided by the Guaranty in an amount subject to proof; and

4.      Such other and further relief as the Court deems just and proper.

**On the Third Claim:**

1.      That the Deed of Trust be foreclosed;

2.      That judgment be entered directly and that the Property and the Property thereunder be sold, according to law, by the Sheriff of the applicable County or a commissioner to be appointed by the Court;

3.      That Defendants and all persons claiming under them subsequent to the execution of the Deed of Trust, either as lien claimants, judgment creditors, claimants under a junior trust deed, purchasers, or other encumbrances be barred and foreclosed from all rights, claims, interests, or equity of redemption in the premises, and every part of the Property, when time for redemption has elapsed.

4.      That judgment be entered against Defendants for any deficiency that may remain after applying all of the net proceeds of the sale of the Property properly applicable to the satisfaction of said judgment;

5.      That TCJ or any other parties to this suit be permitted to become a purchaser at the foreclosure sale;

6.     That when the time for redemption has elapsed, the commissioner or sheriff execute a deed to the purchaser of the Property at the sale, and that the purchaser be let into possession of the Property on production of the commissioner's or sheriff's deed;

7.     That TCJ be allowed to recover its costs of the suit, and attorneys' fees in an amount subject to proof; and

8.     For such other and further relief as the Court deems proper.

**On the Fourth Claim:**

1.     That the Security Agreement be foreclosed;

2.     That judgment be entered directly and that the Collateral thereunder be sold, according to law, by the Sheriff of the applicable County or a commissioner to be appointed by the Court;

3.     That Defendants and all persons claiming under them subsequent to the execution of the Security Agreement, either as lien claimants, judgment creditors, claimants under a junior trust deed, purchasers, or other encumbrances be barred and foreclosed from all rights, claims, interests, or equity of redemption in the premises, and every part of the Collateral, when time for redemption has elapsed.

4.     That judgment be entered against Defendants for any deficiency that may remain after applying all of the net proceeds of the sale of the Collateral properly applicable to the satisfaction of said judgment;

5.     That TCJ or any other parties to this suit be permitted to become a purchaser at the foreclosure sale;

6.     That when the time for redemption has elapsed, the commissioner or sheriff execute a deed to the purchaser of the Collateral at the sale, and that the purchaser be given possession of the Collateral on production of the commissioner's or sheriff's deed;

7.     That TCJ be allowed to recover its costs of the suit, and attorneys' fees in an amount subject to proof; and

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

10151936.5

19

8.     For such other and further relief as the Court deems proper.

**On the Fifth Claim:**

1.     For the appointment of a receiver to manage, receive, and collect the property in which TCJ holds a security interest to the extent that the same is not in TCJ's possession, including, without limitation, the proceeds therefrom; and for the receiver to apply the same to the payment of principal and interest owing from Defendants to TCJ in accordance with orders of this Court and the parties' agreements; and to uphold and carry into effect the terms of TCJ's security interests; and that the receiver have all other powers and duties reasonably necessary to carry out his duties and responsibilities, including, without limitation, authority to sell the Collateral and Real Property or otherwise.

2.     That a temporary restraining order and preliminary injunction be entered prohibiting Defendants from:

a.  Demanding, collecting, receiving, spending or in any way converting or using any of the proceeds of the property to which TCJ holds a security interest;

b.  Hiding, secreting, transferring, selling, pledging, granting a security interest in, or in any other matter disposing or hypothecating any of that property;

c.  Transferring, concealing, destroying, defacing, or altering any of the instruments, documents, books, records, or any other writings, whether in hard copy or maintained electronically, relating to the business of Trimed;

d.  Transferring directly or indirectly any interest by sale, shipment of goods, pledge or grant of security interest, assignment, invoice or encumbering in any manner the property in which plaintiff holds a security interest, and any and all proceeds or products thereof; and

e.  Withholding true copies of any and all documents and information

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA  92612-4414

10151936.5

20

COMPLAINT

called for by the Master Agreement, including but not limited to quarterly, monthly and annual balance sheets and income statements, sales tax remittance forms and federal tax returns on Form 941, signed Borrowing Base Certificates, bank statements and weekly bank snapshots, detailed aging reports for Trimed's accounts receivable and accounts payable.

3.     That TCJ be allowed to recover its costs of the suit, and attorneys' fees in an amount subject to proof; and

4.     For such other and further relief as the Court deems proper.

Dated:  June 23, 2017              **BRYAN CAVE LLP**

                                   By:   */s/ H. Mark Mersel*
                                         H. Mark Mersel

                                   By:   */s/ David Harford*
                                         David Harford

                                   Attorneys for Plaintiff, TCJ I, LLC

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414